UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


UNITED STATES OF AMERICA,　　　　　　　　　Crim. No. 05-486-HA

　　　　　Plaintiff,　　　　　　　　　　　　　　　　OPINION AND ORDER

　　v.

JAIME MENDOZA-RODRIGUEZ,

　　　　　Defendant.

───────────────────────────────

HAGGERTY, Chief Judge:

　　Defendant is charged with illegally reentering the United States in violation of 8 U.S.C. § 1326(a) and (b)(2). A four-day jury trial is set for February 6, 2007.

　　Defendant moves to dismiss the indictment on grounds that the underlying prior deportation was defective and denied him due process, and so the government cannot prove the deportation element of the crime of illegal reentry. The government opposes defendant's motion on grounds that any defect in the prior deportation proceeding did not prejudice defendant because his prior drug convictions rendered him statutorily ineligible for relief from deportation.

OPINION AND ORDER- 1

The court heard oral argument on January 18, 2006. The matter was taken under advisement after the parties filed additional supplemental briefing. For the following reasons, defendant's Motion to Dismiss [23] is denied.

## BACKGROUND

Defendant Jaime Mendoza-Rodriguez (defendant) is a native and citizen of Mexico. Defendant has been deported from the United States at least four times – twice in 1994, once in 1996, and again in 2003.

Defendant has allegedly incurred convictions for drug offenses in at least two states under various names. On April 8, 1994, defendant was convicted under the names "Rodrigo Venegas-Rodriguez, aka Juan Perez-Perez" and "Juan Perez-Perez" of delivery of a Schedule II controlled substance and of possession of a controlled substance in Multnomah County Circuit Court. Defendant was deported on June 9, 1994, and again on November 4, 1994.

On September 5, 1995, defendant was convicted of three counts of possession of a controlled substance in Salt Lake County, Utah, under the name "Jaime Mendoza Rodrigues."

On July 16, 1996, the former Immigration and Naturalization Service instituted deportation proceedings against defendant by issuing an Order to Show Cause and Notice of Hearing. Government's Resp. to Def.'s Mot. to Dismiss, Ex. E (hereinafter Order to Show Cause). The Order to Show Cause alleged that defendant entered the United States without being inspected by an immigration officer, and that defendant had incurred the three convictions in Utah. It did not make allegations regarding the Oregon convictions. The Order to Show Cause alleged three bases for deporting defendant: (1) entering without inspection, (2) being "convicted of a violation of (or a conspiracy to violate any law or regulation of a State, the

OPINION AND ORDER- 2

United States, or a foreign country relating to a controlled substance," and (3) being "convicted of an aggravated felony . . ." Order to Show Cause at 3.

On July 31, 1996, an Immigration Judge (IJ) conducted a deportation hearing. A transcript of the proceeding reveals that the IJ conducted a group proceeding for approximately twenty-five detainees, relying on an interpreter to obtain global answers to many of the questions asked. Supplemental Mem. in Supp. of Mot. to Dismiss, Ex. A (hereinafter Tr.). The IJ asked defendant individually whether he entered the United States at a particular place and time, and defendant personally admitted that he came across the border at San Ysidro in 1993. Tr. 10. The IJ asked the entire group whether they were inspected, and the interpreter answered, "No by all." Tr. 12. Defendant admitted that he had been convicted in Utah of "three counts of possession of drugs September 8 of last year." Tr. 13.

The IJ briefly discussed the possibility of relief from deportation, but stated "if I read you . . . criminal grounds for deportation, I cannot give you voluntary departure." Tr. 17. The IJ also asked the group whether anyone wished to file an appeal, and the interpreter responded, "No by all." Tr. 19.

In a written decision, the IJ found defendant "deportable on the charge(s) in the Order to Show Cause" and ordered defendant deported to Mexico. Government's Resp. to Def.'s Mot. to Dismiss, Ex. F (hereinafter Decision). The Decision noted that defendant had "made no application for relief from deportation." Decision. Defendant was deported on August 6, 1996.

In 1997, defendant was convicted of illegally reentering the United States after returning again, and was deported again on March 11, 2003.

OPINION AND ORDER- 3

On September 30, 2005, defendant was allegedly located by immigration authorities at a Multnomah County jail following his arrest for violating his state probation. He was allegedly identified through fingerprint comparison. On December 6, 2005, a federal grand jury returned the indictment in this case charging defendant with illegally reentering the United States, which defendant now moves to dismiss.

## ANALYSIS

Defendant seeks dismissal of the indictment on grounds that July 1996 deportation proceeding was defective and so cannot form an element of this illegal reentry charge. *See United States v. Proa-Tovar*, 975 F.2d 592, 595 (9th Cir. 1991) (en banc) (defendant cannot be convicted of illegal reentry if defendant's due process rights were violated in deportation hearing and violation was prejudicial).

To sustain a collateral attack on the prior deportation order, defendant must show: (1) that he exhausted all administrative remedies available to him to appeal his removal order, (2) that the underlying removal proceedings improperly denied him an opportunity for judicial review, and (3) that the entry of the order was fundamentally unfair. *See United States v. Ortiz-Lopez*, 385 F.3d 1202, 1203-1204 (9th Cir. 2004) (quotations and citation omitted); *United States v. Hinojosa-Perez*, 206 F.3d 832, 835 (9th Cir. 2000).

**1.      Exhaustion of Administrative Remedies**

Generally, a defendant may not challenge the validity of his prior deportation unless he exhausted "any administrative remedies that may have been available to seek relief against the order." 8 U.S.C. § 1326(d); *see also United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1048

OPINION AND ORDER- 4

(9th Cir. 2004) (collateral attack is barred if a defendant "validly waived the right to appeal [the removal] order during the deportation proceedings").

However, a failure to exhaust administrative remedies is excused and does not preclude a collateral attack if the defendant's waiver of appeal "did not comport with due process." *Id.* at 1048 (quotations omitted). A waiver of appeal does not comport with due process if the waiver is "not considered and intelligent," such as where the IJ failed to inform the defendant of his right to appeal his removal or of possible grounds for relief from deportation. *Id.* at 1048-49 (citation and quotations omitted). *See also United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000) (failure to advise defendant of the right to seek relief from deportation amounts to a denial of both due process and a meaningful opportunity for judicial review).

It is undisputed that defendant failed to exhaust his administrative remedies. However, defendant argues that this failure is excused because he did not validly waive his right to appeal. In particular, defendant asserts that the group proceeding employed by the IJ did not allow for personal waiver. This court agrees.

The Ninth Circuit has made clear that a detainee must *personally* waive the right to appeal in order for the waiver to be deemed valid. *See Ubaldo-Figueroa*, 364 F.3d at 1046, 1049 (counsel's statement that "we'll accept [the deportation order] as a final order" in response to IJ's inquiry regarding appeal did not establish valid waiver by detainee); *United States v. Estrada-Torres*, 179 F.3d 776, 781 (9th Cir. 1999), *overruled on other grounds by United States v. Rivera-Sanchez*, 247 F.3d 905 (9th Cir. 2001) (deportation proceeding did not violate due process, even though the IJ addressed deportees as a group when he discussed the right to appeal the deportation order, when the IJ also asked alien individually, "Do you accept the decision or

OPINION AND ORDER- 5

wish to appeal?"); *United States v. Zarate-Martinez*, 133 F.3d 1194, 1197-98 (9th Cir. 1998) (informing and explaining the right to appeal to deportees as a group, without asking each deportee individually if he wants to appeal, is not sufficient); *United States v. Lopez-Vasquez*, 1 F.3d 751, 752-54 (9th Cir. 1993) (mass silent waiver of right to appeal did not satisfy due process).

Here, the IJ did not personally address defendant, and defendant did not personally respond to questions regarding his right to appeal. Instead, an interpreter made a global pronouncement on behalf of defendant and some twenty-five other detainees that they would not appeal their deportation orders. Given that defendant's counsel could not validly waive defendant's right to appeal, *Ubaldo-Figueroa*, 364 F.3d at 1046, 1049, this court is unable to conclude that an interpreter could do so by means of a global statement on behalf of defendant and twenty-five other detainees. Because defendant did not personally waive his right to appeal, his failure to exhaust his administrative remedies is excused and does not preclude him from collaterally attacking the deportation proceeding. *See id.* at 1048-49.

**2.    Fundamental Unfairness**

To prove fundamental unfairness, defendant must show that: (1) his due process rights were violated by defects in the underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects. *Id.* at 1048 (quotations omitted). *See also United States v. Lopez-Vasquez*, 1 F.3d 751, 756 (9th Cir. 1993) (quotations omitted) (requiring "some concrete evidence indicating that the violation of [the detainee's right to appeal] actually had the potential for affecting the outcome of [the] deportation proceedings").

OPINION AND ORDER- 6

In addition to the defects related to defendant's right to appeal, defendant asserts that the government failed to prove the allegations establishing that he was deportable. The government must prove by "clear, unequivocal, and convincing evidence that the facts alleged as grounds of [removability] are true." *Gameros-Hernandez v. INS*, 883 F.2d 839, 841 (9th Cir. 1989) (citing *Woodby v. INS*, 385 U.S. 276, 286 (1966)).

The Order to Show Cause alleged three bases for deporting defendant: (1) entering without inspection, (2) being "convicted of a violation of (or a conspiracy to violate any law or regulation of a State, the United States, or a foreign country relating to a controlled substance," and (3) being "convicted of an aggravated felony . . ." Order to Show Cause at 3.

**1.      Entry Without Inspection**

Defendant argues that the group proceeding employed was insufficient to prove that he illegally reentered the United States. Defendant complains that although he personally admitted that he entered the United States, he did not personally admit that he was not inspected. Instead, the IJ obtained a global response from the interpreter on behalf of defendant and the other detainees that none of them was inspected before they entered the United States.

However, defendant cites no authority for the proposition that a group proceeding cannot be employed to prove the elements of illegal reentry. The Ninth Circuit has held that the government may conduct group deportation hearings if the proceedings comport with due process. *United States v. Nicholas-Armenta*, 763 F.2d 1089, 1090 (9th Cir. 1985) (rejecting collateral attack by demonstrably deportable alien who claimed that 33-person deportation hearing violated due process as matter of law when he failed to demonstrate actual prejudice). Although the Ninth Circuit has required a personal waiver of the right to appeal by each

OPINION AND ORDER- 7

detainee, *Zarate-Martinez*, 133 F.3d at 1197-98, the court has not recognized any other due process pitfalls in group deportation proceedings.

As in *Nicholas Armenta*, this court discerns no actual prejudice to defendant arising from the group procedure employed. Defendant does not claim that he was inspected prior to entering the United States, but merely takes issue with the manner in which his admissions of illegal reentry were obtained. In so arguing, defendant asks this court to find that group proceedings violate due process per se, a proposition that the Ninth Circuit has rejected. *Nicholas-Armenta*, 763 F.2d at 1090. Accordingly, the court acknowledges the interpreter's statement on behalf of defendant as an admission by defendant that he illegally reentered the United States and finds that defendant was deportable on those grounds.

**2.    State Drug Convictions**

Defendant argues that the state drug convictions alleged in the Order to Show Cause could not serve as predicate removal offenses because there was no evidence that they involved a controlled substance that was enumerated in the Controlled Substance Act. This court agrees.

A recent Ninth Circuit case makes clear that an alien's state criminal conviction for possession of controlled substances cannot serve as a predicate for removal unless the government has proven that the underlying substance is covered by section 102 of the Controlled Substances Act (CSA), 21 U.S.C. § 802. *Ruiz-Vidal v. Gonzales*, No. 04-73812, 2007 WL 113940, at *7-8 (9th Cir. Jan. 18, 2007) (state criminal conviction for possession of controlled substance could not serve as predicate for removal when nature of substance was unclear).

The government attempts to distinguish *Ruiz-Vidal* on grounds that it involved convictions under California state law, while defendant was convicted of possession under Utah

OPINION AND ORDER- 8

state law. This argument is unavailing. The question raised by *Ruiz-Vidal* is whether the controlled substance underlying the state law conviction is listed in the federal schedule of the CSA; which state issued the conviction is irrelevant.

Here, as in *Ruiz-Vidal*, it is unclear which controlled substances defendant was convicted of possessing. Neither the record of convictions for "Possession of Controlled Substances" nor the IJ's broad question regarding whether defendant possessed "drugs" established which controlled substances were involved. Because this court can only speculate as to whether the convictions involved a controlled substance that was enumerated in the CSA, they could not serve as a basis for deporting defendant. *Id.*

However, defendant retains the burden of establishing prejudice. Prejudice must be shown "even when the due process violation is clear." *United States v. Bahena-Cardenas*, 411 F.3d 1067, 1077 (9th Cir. 2005). *United States v. Leon-Leon*, 35 F.3d 1428, 1432 (9th Cir. 1994) (no prejudice when detainee would have been deported even if the hearing had been perfectly conducted).

Defendant asserts that he was prejudiced because absent the defects, he would not have been deported at all. This court disagrees. For the reasons discussed above, defendant was deportable based on his admitted entry into the United States without inspection. Thus, the state drug convictions were not necessary predicates for his removal, and defendant was not prejudiced by the government's failure to prove which controlled substances those convictions involved.

///

///

OPINION AND ORDER- 9

### 3.    Aggravated Felonies

Finally, defendant asserts that the IJ erroneously concluded that he had committed aggravated felonies because his deportation order only alleged convictions for possession of a controlled substance, which are not aggravated felonies for purposes of a deportation proceeding. *See Lopez v. Gonzales*, 127 S. Ct. 625, 629, 633 (2006) (possession of a controlled substance, even if punished as a felony in the state system, is not a federal felony and so does not qualify as an aggravated felony in a deportation proceeding).

Assuming that the IJ's error violated due process, defendant must still show prejudice. *Bahena-Cardenas*, 411 F.3d at 1077. This requires a showing that defendant "had plausible grounds for relief from deportation." *United States v. Arce-Hernandez*, 163 F.3d 559, 563 (9th Cir. 1998).

Defendant asserts prejudice on grounds that had his prior possession convictions been considered "non-aggravated" as required by *Lopez*, he "may have been eligible to apply for voluntary departure in lieu of deportation" under 8 U.S.C. § 1254(e) as it existed at the time of his 1996 deportation hearing. Def.'s Mot. to Dismiss at 4. This court disagrees. Rather, the court finds that defendant's 1994 Oregon aggravated felony conviction made him ineligible for voluntary departure because they precluded him from establishing that he was "a person of good moral character."

A defendant seeking voluntary departure under § 1254(e) had to establish that he was statutorily eligible for that relief and that he was entitled to a favorable exercise of agency discretion. *United States v. Gutierrez-Alba*, 128 F.3d 1324, 1326 (9th Cir. 1997) (quoting *Rashtabadi v. Immigration Naturalization Serv.*, 23 F.3d 1562, 1571 (9th Cir. 1994)). To be

OPINION AND ORDER- 10

statutorily eligible for relief, a defendant had to show that "he [was], and [had] been, a person of good moral character for at least five years immediately preceding his application for voluntary departure." *Gutierrez-Alba*, 128 F.3d at 1326 (citations and quotations omitted).

At the time of the deportation hearing, federal law defined "good moral character" negatively, providing that no person who "is, or was ... a member of one or more of the classes of persons ... described in ... subparagraphs (A) and (B)" of 8 U.S.C. § 1182(a)(2) could be regarded as a person of good moral character. 8 U.S.C. § 1101(f) (1996).

Two years prior to the deportation proceeding, defendant was convicted in Oregon of delivery of a Schedule II controlled substance, making him a member of the class described in § 1182(a)(2)(A)(i)(II). This section excludes from relief any alien convicted of "a violation of . . . any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in [the CSA, 21 U.S.C. § 802])."

Thus, because the Oregon conviction involved a controlled substance as defined by the CSA and constitutes an aggravated felony under the CSA, *see* § 841, defendant was ineligible for any discretionary relief from deportation, including voluntary departure. *See* 8 U.S.C. §§ 1254(e), 1251(a)(2)(A)(iii)(1996) ("Any alien who is convicted of an aggravated felony at any time after entry is deportable"). *See also Becker v. Gonzales*, No. 05-76977, 2007 WL 60840, at *2 (9th Cir. Jan. 10, 2007) ("A conviction for an aggravated felony precludes eligibility [for cancellation of removal] even absent a charge and finding of removability on that ground").

The court rejects defendant's contention that his Oregon aggravated felony conviction cannot be considered in determining whether he was statutorily eligible for relief from deportation. Unlike defendant's possession convictions for which the controlled substance was

not specified, the Schedule II controlled substance conviction correlates to the CSA, and so does not run afoul of *Ruiz-Vidal*.  *See* O.R.S. 475.005 ("Controlled substance means a drug or its immediate precursor classified in Schedules I through V under the federal Controlled Substances Act, 21 U.S.C. 811 to 812").

Moreover, the Ninth Circuit expressly found that an aggravated felony conviction precludes discretionary relief even if the defendant had "never been charged as removable based on [that] . . . conviction."  *Becker*, 2007 WL 60840, at *3.  Thus, whether or not the Oregon conviction was alleged in the Order to Show Cause does not affect its impact on defendant's eligibility for relief from deportation.  *See id.* at *4 (aggravated felony conviction that was not charged as a basis for removal "would nonetheless remain an aggravated felony for purposes of precluding his application for cancellation of removal").

Because defendant has failed to establish that any defects in the prior deportation proceeding prejudiced him, his Motion to Dismiss the indictment must be denied.

## CONCLUSION

For the foregoing reasons, defendant's Motion to Dismiss [23] is DENIED.

IT IS SO ORDERED.

DATED this  2   day of February, 2007.

                                                 /s/ ANCER L. HAGGERTY

                                                 ANCER L. HAGGERTY
                                                 United States District Judge